On, Rehearing
TATE, Judge
(dissenting).
The writer respectfully dissents from the majority’s reversal of the trial court on rehearing. My reasons are for the most part set forth in our court’s original majority opinion above.
However, I deem it appropriate to point out that even the new majority opinion recognizes that the attending physician, with much experience in the diagnosis and treatment of thrombophlebitis, was of the positive opinion that a return to work would endanger Mrs. Veuleman’s health and life. As noted by the original affirming majority opinion (and not contradicted by the present .reversing one), this experienced doctor also felt that the possibility of a recurrence of the dangerous thrombophle-bitic condition was appreciably increased by the prior work-caused thrombphlebitis. Tr. 191, 227, 230.
*264 Furthermore, the new majority opinion does admit that one of the specialists (Dr. Gutierrez) who saw this lady once (after most objective surface manifestations had disappeared) admitted that the prior throm-bophlebitis would predispose her to a recurrence. This physician also admitted that it was possible the lady had suffered a deep-vein thrombophlebitis (Tr. Ill) as well as one of the near-surface ones, which both he and the other specialist admitted was a most dangerous predisposing occurrence, a “catastrophic disease” (Tr. 115), “as dangerous a disease as exists” (Tr. 105).
Dr. Gutierrez testified that superficial thrombophlebitis “usually falls into the category of a minor ailment, depending upon its severity and extent”. Tr. 105. He thought that superficial thrombophlebitis did not predispose to recurrences “unless the patient had some systemic illness”. Tr. 106. But, of course here, Dr. Gutierrez did find a systemic illness, varicosity of the veins.
The other specialist “(Dr. Kaplan) also saw the lady but once and then after the superficial (near-surface) manifestations had disappeared, he said. He did find a tenderness, which he imagined was muscular rather than venous (although the lady had never had such complaint prior to her injury of eight months earlier). This specialist felt that Mrs. Veuleman had suffered a near-surface (superficial) vein thrombophlebitis, rather than a deep-vein one. The substance of his testimony is that the former is not “as dangerous in residual”, and that doctors are “not as concerned about it” as compared with the former. Tr. 69. Having arrived (thus eight months later and on the basis of a single examination) at the conclusion that Mrs. Veuleman’s throm-bophlebitis was not of the serious variety, this young specialist then concluded that the treating physician had erroneously afforded her too intensive and extensive a condition. (This attending physician had — unlike him —examined the patient when she was fully subject to the aggravated condition.) Having determined that probably no deep-vein thrombosis had ever existed on the basis of his own belated examination, this specialist then blithely concluded that the chances that a subsequent pulmonary embolism could cause death from a recurrence of a superficial embolism were “negligible” • — ’“one out of a thousand” ! Tr. 83.
My brethren of the majority may feel that the lady incurs a negligible risk by returning to work, since only one out of a thousand persons is likely (if indeed the first occurrence was only an outer-vein complication) to suffer a recurrence by returning to work. This recurrence, however, admittedly subjects the patient to a high risk of death through the clot and traveling to the heart through the bloodstream. What my brethren seem to overlook is that the attending physician (who has treated Mrs. Veuleman over the years and who has treated her constantly since the thrombophlebitic incident) is of the firm opinion that Mrs. Veuleman herself is that one in a thousand who does suffer danger of death through subjecting herself to the risk of a recurrence of the thrombo-phlebitis by returning to her work requiring her to stand long hours on her feet.
I am the last to deny that the extremely skillful advocacy by the appellant’s able counsel is most persuasive. Indeed, our learned and conscientious trial brother, who saw and heard the witnesses, was so much impressed by it that he granted a rehearing and carefully re-examined the record and the law, following his initial award of total and permanent disability.
Nevertheless, just as upon careful reexamination he reinstated the award with full written reasons (Tr. 299-302, affirming his original opinion, Tr. 282-295), so in my opinion should we do likewise. Compensation cases should be determined on facts and medical evidence as reasonably evaluated by the trier of fact, not on the basis of clever legal analyses of the guesses of medical theoreticians who have no basis upon which to judge the seriousness and depth of the original thrombophlebitis of *265 this patient, whom they saw but once and then only months later.
As a matter of fact, even under the majority’s discussion of the facts and the medical evidence, its reversal of the trial court flouts, as a matter of law, the recent clarification of the compensation law afforded by our Supreme Court in Bertrand v. Coal Operators Casualty Co., 253 La. 1115, 221 So.2d 816 (March 31, 1969). There, in reversing this court’s determination that the work-trauma’s acceleration of arteriosclerosis was not sufficiently proven, the court stated: “The residual condition from an accidental injury which substantially increases the possibility of recurrence of a disabling or death-dealing episode is legally disabling and is compensable under our Workmen’s Compensation law. * * * The courts should not offer to an accidentally injured employee the alternatives of either returning to work at unreasonable, even unconscionable risk or becoming dependent upon public support. Workmen’s compensation is a creation of the Legislature for the very purpose of localizing the economic responsibility in such a situation.”
Here, Mrs. Veuleman is told by her attending physician that she should not return to work, at the risk of a dangerous recurrence of her thrombophlebitis if she does so. Even the most optimistic estimate of a contrary medical specialist admits that the risk of a fatal recurrence is at least one in a thousand. In actual fact, she cannot and will not return to work because of the medically-based fear of a fatal recurrence. Yet we deprive her of compensation, apparently on the basis of innuendo in legal brief and of our theoretical re-diagnosis of her disease.
I respectfully dissent.
Rehearing denied.
TATE, J., dissents. FRUGÉ, J., votes for rehearing.